**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | * | |
| K.G. TILE, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-20-2072 |
| | * | |
| SUMMITVILLE TILES, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff K. G. Tile, LLC ("KG Tile") filed this tort action against Defendant Summitville
Tiles, Inc. ("Summitville"). Summitville filed a Motion to Dismiss Counts I & II of the Complaint,
or in the alternative, Motion to Transfer, ECF 11, with a supporting memorandum of law, ECF
11-1. (collectively, the "Motion"). KG Tile opposed the Motion, ECF 14, and Summitville filed
a reply, ECF 17. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that
follow, the Motion will be denied.

### I.     FACTUAL BACKGROUND

The facts below are derived from the Complaint and are taken in the light most favorable
to KG Tile, the non-moving party. Beginning in 1966, Summitville, an Ohio-based commercial
tile manufacturer, operated a distribution center on W. Aylesbury Road in Timonium, Maryland.
ECF 1 ¶¶ 2, 6. Kevin Gahan began working at the Timonium distribution center, which at the
time was managed by his father, in 1987. *Id.* ¶ 6. Gahan's father assisted in convincing the
Washington Metropolitan Area Transit Authority (WMATA) to use Summitville tile in its
Metrorail stations when they were originally built. *Id.* ¶ 7.

1

In 2000, Summitville filed bankruptcy. *Id.* ¶ 8. An Italian company purchased the Timonium distribution center, but continued "supporting Summitville and supplying its products." *Id.* In 2006, Gahan formed KG Tile and it purchased the Timonium distribution center, to continue supplying Summitville products to its customers, including WMATA. *Id.* KG Tile served as Summitville's primary distributor in Maryland and "the *de facto* exclusive distributor of Summitville products to the WMATA." *Id.* ¶ 9.

Summitville's terms of sale consistently required payment within 30 days of an invoice, sent upon product shipment. *Id.* ¶ 10. KG Tile usually paid any amounts due within 30 days, but occasionally required additional time to pay. *Id.* Those payment delays did not cause significant discord in the companies' relationship between 2006-2020. *Id.*

In May 2018, WMATA announced a large project, including the demolition and rebuilding of twenty outdoor Metrorail stations. *Id.* ¶ 11. The initial phase, involving six of the stations, occurred in the summer of 2019 ("Initial Phase"). *Id.* ¶ 12. For the Initial Phase, WMATA's general contractor, Kiewit Infrastructure Company ("Kiewit"), subcontracted with two masons, R. Bratti & Associates ("Bratti") and Firvida Construction Corporation ("Firvida"), to provide and install Summitville slip-resistant tile at the six renovated stations. *Id.* ¶ 13. In December 2018, Bratti and Firvida each sent purchase orders to KG Tile, requesting delivery of the Summitville tile and related supplies for the Initial Phase. *Id.* ¶¶ 14, 15. KG Tile received and acknowledged those purchase orders and placed corresponding purchase orders to obtain the tile from Summitville. *Id.* ¶ 16.

In March 2019, Kiewit, Firvida, KG Tile, and Summitville held two days of meetings at Summitville's Ohio headquarters. *Id.* ¶ 18. During the meetings, Kiewit stated that it intended to continue ordering Summitville tile from KG Tile for the remainder of the WMATA project, if the

supply and installation continued to run smoothly.  *Id.* ¶ 20.  In the short term, Kiewit asked whether additional tile could be supplied for the mezzanine areas of the initial six Metrorail stations ("the Mezzanine Phase").  *Id.* ¶ 19.  KG Tile and Summitville responded that they could fill the orders for the Mezzanine Phase if purchase orders were submitted.  *Id.*

On April 12, 2019, Bratti sent KG Tile a purchase order for the Mezzanine Phase, requesting delivery of 51,000 square feet of Summitville tile between July 10, 2019 and August 23, 2019.  *Id.* ¶ 21.  The total amount owed to KG Tile under the purchase order was $500,981.23.  *Id.* ¶ 22.  On that same date, Firvida also sent a purchase order to KG Tile, for delivery of 28,000 square feet of tile for the Mezzanine Phase.  *Id.* ¶ 23.  The total amount of that purchase order was $270,107.29.  *Id.*

The next day, after having acknowledged the purchase orders from Bratti and Firvida, KG Tile placed two corresponding purchase orders with Summitville for the Mezzanine Phase tile, at a total value of $391,059.90.  *Id.* ¶ 25.  Thus, KG Tile expected a profit of approximately $380,028.62 from the Mezzanine Phase purchase orders.  *Id.* ¶ 26.

In April 2019, Summitville began shipping the Initial Phase tile to KG Tile, accompanied by corresponding invoices.  *Id.* ¶ 27.  All of the invoices were timely paid in April and May, 2019.  *Id.*  Beginning in June 2019, however, KG Tile fell behind on its payments to Summitville for the Initial Phase tile.  *Id.*  The two companies exchanged emails in mid-June regarding the late payments.  *Id.* ¶¶ 28, 29.

In late June 2019, Bratti paid $112,113.60 to KG Tile, by American Express.  *Id.* ¶ 30.  As a result of issues with its bank and American Express, KG Tile was unable to access those funds for almost one month.  *Id.*  On July 1, 2019, the Chief Financial Officer at Summitville, Mark Webb, emailed KG Tile to claim that invoiced amounts totaling $140,000 were past due, and to

request a "big check before Friday." *Id.* ¶ 31.  Gahan, of KG Tile, responded that same day to describe the company's difficulties with accessing the Bratti funds, and to clarify that KG Tile would pay Summitville as soon as those funds were available. *Id.* ¶ 32.

On July 3, 2019, Gahan told Summitville that the bank would not make the Bratti funds available until the following week. *Id.* ¶ 33.  In response, Gahan received angry email and voice mail messages from Summitville's president, Bruce Johnson. *Id.*  On July 11, 2019, Bratti made another American Express payment to KG Tile, in the amount of $138,795.91. *Id.* ¶ 35.  KG Tile again experienced difficulties accessing those funds. *Id.*

On July 16, 2019, Summitville representatives, including Johnson, spoke with Gahan by phone. *Id.* ¶ 36.  Summitville informed Gahan that it was canceling KG Tile's Mezzanine Phase purchase orders, which had not yet been filled. *Id.*  Summitville also demanded that KG Tile cancel the corresponding Mezzanine Phase purchase orders it had received from Bratti and Firvida. *Id.*  Shortly after the call, Johnson emailed Gahan, noting that KG Tile has a past due payment of $150,000, and stating that Summitville would be contacting Bratti and Firvida to request that they reissue their purchase orders directly to Summitville. *Id.* ¶ 37.  The email stated, "if your account gets to 'current' and remains there, we will not contact the G.C. or subcontractors for payment, but it is imperative that the account remains current for the remainder of this project.  Please let me know when these issues will be satisfied." *Id.*  Shortly thereafter, Summitville emailed Kiewit, Firvida, and Bratti, falsely claiming that KG Tile had agreed to release their Mezzanine Phase purchase orders, and directing Bratti and Firvida to reissue identical purchase orders, on the same terms, to Summitville directly. *Id.* ¶ 39.  Roughly 90 minutes later, Webb contacted KG Tile to ask for details about KG Tile's methods of pricing on tile deliveries to its customers. *Id.* ¶¶ 40-41.

Over the next two days, KG Tile received emails from Bratti and Firvida cancelling the existing Mezzanine Phase purchase orders and thanking KG Tile for its work. *See, e.g.*, *id.* ¶¶ 43, 45 (citing a Firvida email stating "We have no choice but to follow Summitville's instructions and issue a purchase order with them."). On July 18, 2019, Summitville again emailed Kiewit, Bratti, and Firvida, falsely stating that Gahan had agreed "on the phone Tuesday afternoon" that the KG Tile purchase orders for the Mezzanine Phase were null and void. *Id.* ¶ 46.

On July 22, 2019, Summitville sent a letter to Firvida "requesting that Firvida temporarily withhold any payments to KG Tile pending the resolution of the dispute between Summitville and KG Tile." *Id.* ¶ 48. KG Tile alleges that, upon information and belief, Summitville sent a similar letter to Bratti. *Id.* ¶ 49. The next day, Firvida wrote KG Tile to say, "In accordance with Summitville's request, Firvida is withholding any further payments to KG Tile for the first order of tile. In addition, Summitville has cancelled KG Tile's order of tile for the second order. This will force Firvida to obtain this tile directly from Summitville." *Id.* ¶ 50.

Because Bratti and Firvida are continuing to provide masonry work as subcontractors to Kiewit for the WMATA project, KG Tile has not received and will not receive future orders for the remaining fourteen stations in that project. *Id.* ¶¶ 51-53. KG Tile alleges that it will suffer millions of dollars in damages. *Id.* ¶ 55.

## LEGAL STANDARD

Summitville seeks dismissal of Counts I and II under Federal Rule of Civil Procedure 12(b)(6). ECF 30. Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), aff'd sub nom., *McBurney v. Young*, 569 U.S. 221, 133 S.Ct. 1709, 185

L.Ed.2d 758 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 547 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is

improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Ultimately, "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## II.   ANALYSIS

### A.  Motion to Dismiss

Counts I and II of KG Tile's Complaint assert claims for tortious interference with contractual relations and tortious interference with prospective advantage. ECF 1. Summitville's motion to dismiss Counts I and II rests on a single factual premise: that because Summitville was within its legal rights to cancel KG Tile's Mezzanine Phase purchase orders, any resulting impact on KG Tile's contracts or prospective future contracts with Bratti and Firvida cannot be tortious in nature. ECF 11-1. Essentially, Summitville posits, because it was entitled to cancel its agreement to sell to KG Tile, and because that cancellation left KG Tile unable to distribute

Summitville products to Bratti and Firvida, KG Tile has no viable claim for tortious interference with its relationships with those two entities.

The parties agree that KG Tile did not pay Summitville each of the amounts due on the Initial Phase invoices by the time prescribed, and owed a past-due balance at the time Summitville cancelled the Mezzanine Phase purchase orders. They dispute whether that state of affairs entitled Summitville to cancel the purchase orders and whether the past due invoices were the true motivation behind Summitville's actions.

With its Motion to Dismiss and its reply, Summitville submitted a total of six exhibits, consisting of the Credit Agreement between Summitville and KG Tile, a letter between the parties, a series of emails between the parties, and Summitville's distributor bulletin and price list. *See* ECF 11-2 through 11-3; ECF 17-1 through 17-4. Summitville's reliance on these many exhibits illustrates why its arguments fail at the motion to dismiss stage. While this Court is permitted to consider documents attached to a motion to dismiss if the documents are both integral to the complaint and authentic, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164, 166 (4th Cir. 2016), the documents attached by Summitville do not meet those criteria.[1] While it is true that the parties' contractual relationship is front and center in this case, such that the Credit Agreement and Terms and Conditions specifically might ostensibly appear integral, there exists a substantive dispute over whether these documents do, in fact, govern the relevant part of their relationship at issue here. Resolution of such a fact-intensive disagreement at this early stage of the litigation is not

---

[1] For example, Summitville contends that a letter it wrote, which KG Tile referenced briefly in its Complaint but did not attach, "must be treated as true for purposes of the instant Motion." ECF 11-1 at 8. That position turns the motion to dismiss standard on its head. It is readily obvious from a plain reading of the Complaint that KG Tile contests the veracity of the representations Summitville made in that letter. At this stage, the facts must be taken in the light most favorable to KG Tile, not Summitville.

appropriate. Summitville's desire to present its own version of the facts, while understandable, must wait until a motion for summary judgment, which has not been filed.

Instead, in considering Summitville's Rule 12(b)(6) motion, this Court must take KG Tile's alleged facts as true and must draw all inferences in its favor, including the facts relating to whether KG Tile could reasonably be viewed as insolvent, and whether Summitville's motivation for cancelling the contract was the perceived insolvency or its desire to prevent KG Tile from performing the contracts for Firvida and Bratti in order to usurp the anticipated profits.[2] Moreover, additional factual explication is required for this Court to be able to address relevant legal issues, such as whether the Initial Phase and Mezzanine Phase constitute one contract or multiple contracts and whether there existed a "course of performance" between the parties establishing that delayed payment did not constitute a breach of a purchase order based on KG Tile's apparent history of late payments. *See* Md. Code Ann., Com. Law § 1-303(a). Ultimately the facts alleged, with all inferences drawn in favor of KG Tile, meets the relatively low bar to plausibly state a claim for tortious interference, such that the claims should proceed to discovery.

---

[2] Summitville alleges that the Uniform Commercial Code, which is incorporated into both Ohio and Maryland law, permitted its cancellation of the Mezzanine Phase purchase order, because Summitville was permitted to refuse delivery upon discovering "the buyer to be insolvent." *See* ECF 11-1 at 11-12. Summitville has not cited case law from any jurisdiction to support its contention that delayed payments, under circumstances like those presented in this case including the temporary inability to access funds already paid by a customer, sufficiently constitutes insolvency. The UCC's language about having "generally ceased to pay debts in the ordinary course of business" or being "unable to pay debts as they become due" arguably contemplates a more permanent situation than that alleged in KG Tile's Complaint. Applicability of the other UCC provision relied on by Summitville, as codified in O.R.C. § 1302.77, hinges on whether the Initial Phase and Mezzanine Phase constitute separate contracts. Additional facts about the transactions will be adduced in discovery, but drawing all inferences in KG Tile's favor, it has plausibly claimed that Summitville was not entitled to refuse delivery of the Mezzanine Phase tiles in response to delinquent payment on the Initial Phase.

**B. Motion to Transfer**

Summitville contends that the Credit Agreement between Summitville and KG Tile contains a mandatory choice of forum clause, requiring this case to be adjudicated in the Northern District of Ohio. ECF 11-1 at 15-19. The clause provides, "[t]his agreement is deemed executed in Columbiana County, Ohio, is governed and construed by and under Ohio [sic] and the only forum for litigation, if any, shall be Columbiana County, Ohio." *See* ECF 11-2 ¶ 4. Summitville argues for an extremely broad reading of that somewhat inartful language, suggesting that "the explicit terms of the clause make clear that Ohio is the only forum for litigation related in any manner to the Credit Agreement." ECF 11-1 at 16. The clause, in contrast, does not contain that expansive language—nowhere does it specify that suit must be brought in Ohio if it relates "in any manner" to said Agreement. ECF 11-2 ¶ 4. A plain reading would suggest, instead, that the selection clause covers solely disputes "aris[ing] out of the contractual relation and implicat[ing] the contract's terms." *Belfiore v. Summit Fed. Credit Union*, 452 F. Supp. 2d 629, 632 (D. Md. 2006) (internal citations omitted).

The tort claims in this case do not arise out of the Credit Agreement, nor do they necessarily implicate its terms. KG Tile's claims arise out of Summitville's involvement in KG Tile's relationships with Bratti and Firvida, including its allegedly false communications with those companies and its insistence that those companies cancel their contracts with KG Tile and contract directly with Summitville.[3] Certainly, Summitville intends to defend against KG Tile's claims by

---

[3] This case is readily distinguishable from the facts of *Belfiore*, 452 F. Supp. 2d at 631-32. In that case, Belfiore sued his credit union for claims arising out of its reporting of the status of his account. *Id.* His original complaint included a claim for breach of his Membership and Account Agreement (MAA), which contained a mandatory choice of forum clause requiring suit in New York. *Id.* In an amended complaint, Belfiore dropped his breach of contract claim and instead pleaded causes of action in tort. *Id.* The Court deemed Belfiore's attempt at "artful pleading" around the mandatory choice of forum clause to be insufficient to avoid its application, because

claiming legal entitlement under the Credit Agreement to cancel its own purchase orders. But such expected defenses cannot dictate whether Plaintiff's claims "arise out of" the agreement to begin with for forum selection purposes. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 391 (2d Cir. 2007). Given the tangential relationship, at best, between the Credit Agreement and the claims asserted by KG Tile, and the ambiguous choice of forum clause in the contract drafted by Summitville, this Court does not find that the plain language of the choice of forum clause encompasses KG Tile's claims.

Alternatively, Summitville briefly argues that transfer of venue is warranted under 28 U.S.C. § 1404. ECF 11-1 at 18. That statute provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." District courts within this circuit consider "four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). "As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Id.* (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F.Supp.2d 473, 477 (E.D. Va. 2007). Given that substantial weight afforded to KG Tile's choice of forum, Summitville would have to make a compelling showing as to the remaining factors to justify a transfer. It has not done so. Given that KG Tile is in Maryland, and Bratti and Firvida

---

his claims "clearly arise out of his contractual relation with" the credit union. *Id.* at 632. Here, there is no such clarity and therefore no attendant conclusion that KG Tile is merely attempting to avoid its contractual obligation to file suit in Ohio—KG Tile has, from the start, plausibly alleged causes of action sounding in tort, not contract.

are in Northern Virginia, Maryland is the more convenient venue for the plaintiff and for the majority of the witnesses. Ohio would be more convenient for Summitville alone. Accordingly, the relevant factors weigh in favor of retaining venue in Maryland.

## III.     CONCLUSION

For the reasons set forth above, Summitville's Motion to Dismiss, or in the alternative, Motion to Transfer, ECF 11, will be DENIED. A separate Order follows.


Dated: December 10, 2020                                            /s/
                                                      Stephanie A. Gallagher
                                                      United States District Judge